**UNITED STATES DISTRICT COURT**
District of New Jersey

CHAMBERS OF
**JOSE L. LINARES**
JUDGE

MARTIN LUTHER KING JR.
FEDERAL BUILDING & U.S. COURTHOUSE
50 WALNUT ST., ROOM 5054
P.O. Box 999
Newark, NJ 07101-0999
973-645-6042

**NOT FOR PUBLICATION**

LETTER-OPINION & ORDER

September 5, 2006

Abraham S. Alter, Esq.
Langton & Alter
P.O. Box 1798
2096 Saint Georges Avenue
Rahway, NJ 07065

Kristina Cohn, Esq.
Special Assistant U.S. Attorney
c/o Social Security Administration
Office of General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278

       Re:    Rose Rosado v. Commissioner of Social Security
               Civil Action No.: 05-3885 (JLL)

Dear Counsel:

      This matter comes before the Court pursuant to sections 405(g) and 1383(c) of the Social Security Act (hereinafter the "Act"), as amended, 42 U.S.C. §§ 405(g), 1383(c). Plaintiff Rose Rosado seeks a review of a final decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner") denying her claim for Supplemental Security Income benefits under the Act. The Court has jurisdiction to review this matter under section 405(g) and decides this matter after having considered the papers submitted by the parties, as well as the oral argument of the parties held on June 5, 2006. The issue to be decided is whether the Commissioner's decision to deny Plaintiff's application for supplemental security income benefits from April 11, 2002, her application date, through November 15, 2004, the date of the decision of Administrative Law Judge Dennis O'Leary ("ALJ"), is supported by substantial evidence. For the reasons set forth below, this Court concludes that the record does not provide substantial evidence supporting the Commissioner's determination that Plaintiff was not disabled from April 11, 2002 though November 15, 2004. Thus, the Court reverses the Commissioner's decision denying Plaintiff's Supplemental Security Income benefits and remands the matter.

## BACKGROUND FACTS

### A. Plaintiff's Personal and Medical History

The evidence presented by the ALJ is comprehensively detailed in his decision and will only be summarized herein in pertinent part. Plaintiff is approximately 47 years of age. She has a ninth grade education and has no vocationally relevant past work experience. Plaintiff alleges that her disability results from bronchial asthma and chronic obstructive pulmonary disease.

The earliest medical evidence in the record is from Rambhai C. Patel, M.D.P.A. showing a pulmonary function test was performed on January 17, 2000. (R. 104). The impression was obstruction with a post bronchodilator response and interval deterioration. (Id.).

Plaintiff was hospitalized on January 4, 2002 for shortness of breath. (R. 134-147). Plaintiff's doctor reported that Plaintiff was diagnosed with bronchial asthma, chronic obstructive pulmonary disease and gastroesophageal reflux disease since 2000. (Id.). He stated that she could do light work only due to exacerbation of asthma symptoms. (Id.). He also declared that she would be disabled from January 2002 to February 2002, and should be able to resume work on February 25, 2002. (Id.). The doctor finally stated that her asthma was controlled when she was compliant with her medications. (Id.). Plaintiff's doctor reported that Plaintiff could not work from March 2002 to June 2002 due to physical limitations in walking, climbing, stooping, bending and lifting. (Id.).

Also in January 2002, a physician at the State of New Jersey Division of Family Development completed a Confidential Medical Examining Physician's Report and indicated that while the Plaintiff was ambulatory she could not participate in volunteer or community service work programs and was restricted to light work due to exacerbation of asthma symptoms. (R. 105-106). It also indicated that Plaintiff would be disabled from January 28, 2002 to February 25, 2002. (R. 107, 115). The physician noted that Plaintiff's asthma was controlled when compliant with medication. (R. 115). The diagnosis was asthma, chronic obstructive lung disease with an approximate date of January 2000, and GERD with an onset in 1992. (R. 111). A subsequent Confidential Medical Examining Physician's Report, probably from March 2002, indicated that Plaintiff should not work and was be disabled from March 14, 2002 to June 14, 2002 (R. 112-114). This report noted that Plaintiff had physical limitations in walking, climbing, stooping, bending and lifting.

A consultative examination by Dr. Patel in September 2002 revealed moderate obstructive lung disease, but the chest x-rays were normal. (R. 116-121).

A State agency physician concluded in October 2002 that the Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently. (R. 123-130). She could also stand and/or walk about six hours and sit about six hours in an eight-hour day. (Id.). The physician also noted that she should avoid concentrated exposure to fumes, odors, dusts, gases, poor

ventilation, etc.  (Id.).

Plaintiff was hospitalized on March 11, 2003 for treatment of abdominal pain and nausea. She was diagnosed with acute gastritis.  (R. 148-162).

Plaintiff went to the emergency room on April 7, 2003 (R. 163-182) and again on August 30, 2003 for shortness of breath.  The Plaintiff exhibited on examination diffuse wheezing.  It was noted that she smoked one-half pack of cigarettes a day.

Plaintiff was hospitalized in September 2003 for acute gastroenteritis.  Examination revealed bilateral expiratory wheezing and abdominal tenderness. (R. 187-192).

In May 2004, Plaintiff was again hospitalized, however details of the hospitalization are not in the record.  (R. 219).  It was presumably for her pulmonary condition because the disharge form indicates the following medications: Zyrtec, Albuterol, Bupropion, Advair, Prednisone, Azithromycin, and Singular.  (Id.).

The allergist's progress notes in June 2004 revealed that Plaintiff had asthma and mild chronic obstructive pulmonary disease.  (R. 238-239, 241-242).  By this time, Plaintiff had reduced to only two or three cigarettes a day.  Progress notes from July 2004 showed that Plaintiff had bronchial asthma.  (R. 233, 239).  She complained of shortness of breath.

In August 2004, Plaintiff complained of left-sided chest pain radiating to left shoulder. She also complained of shortness of breach on mild exertion, fever, chills, headache, dizziness and weakness for three weeks.  (R. 233-235).  She gained twenty-five pounds in two months. (Id.).  Also in August 2004, the Plaintiff's doctor reported that she was diagnosed with bronchial asthma.  (R. 221-223).  She was able to ambulate, but had limitations in walking, climbing, stooping, bending and lifting.  (Id.).  He also stated that she would be incapacitated from September 2004 to September 2005.  (Id.).  She had dyspnea on exertion.  (Id.).

Dr. Fechner testified at the hearing that Plaintiff had asthma, but that she could do sedentary work with asthma restrictions.  He also noted that smoking aggravates the condition.

Mr. Rocco Meula testified at the hearing that plaintiff could perform work as a clerical sorter, addresser or document preparer of which there are 900 to 1,000 jobs locally and 75,000 nationally.

### B.     Procedural History

Plaintiff filed an application for Supplemental Security Income payments on April 11, 2002.  The application was denied initially and on reconsideration.  A request for hearing was timely filed, and on November 13, 2003 Plaintiff appeared and testified before ALJ O'Leary on September 30, 2004 in Newark, New Jersey.  The ALJ's decision concluded that Plaintiff was

not disabled. Plaintiff appealed the decision to the Appeals Council, and on May 28, 2004 the Appeals Council vacated the prior decision and remanded the case for further administrative proceedings regarding the extent to which the Plaintiff's non-exertional limitations eroded her occupational base for sedentary work. A second hearing was held before ALJ O'Leary on September 30, 2004 in Newark, New Jersey. Plaintiff appeared on her behalf, as well as Dr. Martin Fechner, who appeared as a medical expert, and Rocco Meula, who appeared as a vocational expert. On November 15, 2004, the ALJ again determined that Plaintiff was not disabled within the meaning of the Social Security Act.

The ALJ made the following findings:

1. The Claimant has not engaged in substantial gainful activity since the alleged onset of disability.
2. The claimant's asthma and a history of heroin addiction are considered "severe" based on the requirements in the Regulations 20 CFR § 416.920(b).
3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
4. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.
5. The claimant has the following residual functional capacity: to perform sedentary work. The claimant can lift and/or carry ten pounds. She can stand and/or walk two hours and sit six hours in an eight-hour day. She must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc.
6. The claimant has no past relevant work (20 CFR § 416.965).
7. The claimant is a 'younger individual between the ages of 45 and 49' (20 CFR § 416.963).
8. The claimant has 'a limited education' (20 CFR § 416.964).
9. The claimant has the residual functional capacity to perform a significant range of sedentary work (20 CFR § 416.967).
10. Although the claimant's exertional limitations do not allow her to perform the full range of sedentary work, using Medical-Vocational Rule 201.18 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as a document sorter, addresser or document preparer (900/1,000).
11. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 416.920(g)).

(R. 20-21).

The ALJ's found that Plaintiff's allegations were not credible because they were not

substantiated by the record. "Although the claimant has some of the symptoms alleged, the undersigned finds that her symptoms are not of such severity, persistence and intensity as to preclude all work activity." (R. 18). With respect to the ALJ's analysis of the treating physician's report, he stated:

> The undersigned has considered the assessments offered by the claimant's treating physicians. A treating physician's opinion is given controlling weight only if it is well supported and not inconsistent with other substantial evidence. The undersigned finds that the opinions in this case are not supported by objective clinical findings and are inconsistent with other substantial evidence. Therefore, these opinions are accorded little weight. Additionally, the opinions of the medical expert outweigh those of the state agency physicians.

(Id.). The ALJ also noted that she had not worked in over twenty years, and while she has asthma she continues to smoke against medical advice. (Id.). In addition Plaintiff was not candid about her history of heroin addiction. (Id.). The ALJ found it significant that the medical expert testified that she could perform sedentary work with asthma restrictions, and the vocational expert identified jobs that she could perform. (Id.). He concluded that she was "not disabled for failure to follow prescribed treatment and because she can perform sedentary work." (Id.).

A request for review was filed with the Appeals Council and denied. Plaintiff timely filed an appeal to this Court of the ALJ's decision. Plaintiff filed her Complaint on August 4, 2005. At the hearing before the ALJ and on appeal, Plaintiff has been represented by the law firm of Langton and Alter.

## STANDARDS

### A.     Disability Defined

Under the Social Security Act, a claimant must demonstrate that she is disabled based on an "inability to engage in any substantial gainful activity ("SGA") by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). A person is disabled for these purposes only if her physical or mental impairments are "of such severity that [she] is not only unable to do [his] previous work, but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

Social Security Regulations set forth the following five-step, sequential evaluation procedure to determine whether a claimant is disabled. 20 C.F.R. § 4404.1520(a)(4):

> (4) The five-step sequential evaluation process. The sequential evaluation process

is a series of five "steps" that we follow in a set order. If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step. If we cannot find that you are disabled or not disabled at a step, we go on to the next step. Before we go from step three to step four, we assess your residual functional capacity. (See paragraph (e) of this section.) We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps. These are the five steps we follow:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (See paragraph (b) of this section.)
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (See paragraph (c) of this section.)
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (See paragraph (d) of this section.)
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (See paragraph (f) of this section and § 404.1560(b).)
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. (See paragraph (g) of this section and § 404.1560(c).)

### B.     **Burdens of Proof**

The five-step sequential evaluation involves shifting burdens of proofs. <u>Wallace v. Secretary of Health & Human Servs.</u>, 722 F.2d 1150, 1153 (3d Cir. 1983). The claimant has the burden of establishing at step one that she has not engaged in "substantial gainful activity" since the onset of the alleged disability and at step two that she suffers from a "severe impairment" or "combination of impairments." 20 C.F.R. § 404.1520(a)-(c). If the claimant establishes the initial burdens, she must next demonstrate step three that her impairment is equal to or exceeds one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 404.1520(d). If she

makes this showing then she is presumed disabled. If she cannot show this, then at step four she must show that her residual functioning capacity ("RFC") does not permit her to return to her previous line of work. 20 C.F.R. § 404.1520(e). If the claimant cannot show this, then in the final step, step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial gainful work. 20 C.F.R. § 404.1520(f). Note that the burden only shifts to the Commissioner at step five. If the Commissioner cannot meet this burden, the claimant shall receive benefits. "For each of the first four prongs, a finding of 'not disabled' will end the inquiry; otherwise the inquiry will proceed to the next level." Alexander v. Shalala, 927 F. Supp. 785, 792 (D.N.J. 1995).

### C.     Standard of Review

The main issue before this Court is whether the ALJ's determination to deny disability benefits is supported by substantial evidence. 42 U.S.C. §§ 405(g) and 1383(c)(3). Substantial evidence is more than a "mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence may be slightly less that a preponderance. Hanusiewicz v. Bowen, 678 F. Supp. 474, 476 (D.N.J. 1988).

The reviewing court has a duty to review the evidence in its totality and reviews whether the Commissioner's determination was reasonable. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). The Commissioner has a duty to facilitate the court's review: "[w]here the [Commissioner] is faced with conflicting evidence, [she] must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986). The reviewing court gives deference to the administrative decision, but the court has a duty nonetheless to scrutinize the entire record to determine whether the ALJ's findings are rational and supported by substantial evidence. See Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). The district court however, is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).

### DISCUSSION

Plaintiff's brief is devoted to a criticism[1] of the ALJ's decision rejecting the treating

---

[1] As this Court indicated on the record during oral argument in this matter, this Court will not tolerate Mr. Alter's personal attacks on the ALJ. Plaintiff's brief accuses the ALJ of "skew[ing] the evidence to achieve a goal-directed result." (Pl. Br. at 8). The brief asserts that "the ALJ dismisses the treating physician for no good reason whatsoever because he doesn't think this Court will notice his clumsy bludgeoning of the truth amid the rest of his self-serving findings. . . ." (Id.). Even more problematic is the following blatant accusation:
> This Court can scan the administrative record until the Court's eyes bleed. The
> Court will never find the questions or the answers recited by the ALJ. The ALJ

physician's reports. Therefore, the Court will address only this aspect of the ALJ's decision. It is well established that an ALJ "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending on the extent to which supporting explanations are provided." Ochs v. Comm'r of Soc. Sec., 2006 U.S. App. LEXIS 16376, at *9 (3d Cir. June 29, 2006) (citation omitted). "Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). The regulations provide further guidance:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating

---

> knows that this evidence is there, the ALJ decided not to recited it, the ALJ felt this Court might read this evidence (Tr. 128) and therefore the ALJ assures the Court that Dr. Fetchner, his hand-chose medical 'expert' who never referred to this evidence, can naturally overrule any opinion. . . .The ALJ hired his trusted shill, a semi-retired internist with no particular expertise in pulmonary science. . . .

(Pl. Br. at 13-14).

To this Court's dismay, this is not the first time a court in this jurisdiction has expressed concern about Mr. Alter's unprofessional conduct. Neal v. Comm'r of Soc. Sec., 57 Fed. Appx. 976, 978 n.2 (3d Cir. 2003) ("Counsel's argument that the judge picked a date out of his imagination, in light of Neal's testimony that his symptoms began approximately a year prior to the administrative hearing, has no basis in the record. Counsel must avoid pejorative and unfounded arguments. They ill serve his client and adversely affect his credibility."); Ismail v. Barnhart, Civil Action No.: 04-2615, n.2 (WGB) (D.N.J. Nov. 16, 2005) ("It must be noted, that Plaintiff's attorney does his client a grave disservice by engaging in verbal attacks against the ALJ. These insulting remarks pervade Plaintiff's brief and essentially discredit Plaintiff's position. Such language is strongly discouraged by this Court as well as the Local Rules for the District of New Jersey and the Third Circuit's Local Appellate Rule 28.1."). Mr. Alter has assured this Court that he will refrain from such comments in the future. However, since this Court's ultimate decision is to remand this matter, Mr. Alter's conduct forces this Court to remand to a different ALJ for a new hearing and decision. The only reason this Court is ordering such a drastic remedy is due to Mr. Alter's unfortunate conduct in this case and the Court will not punish his client for his behavior by putting her before an ALJ that has suffered such verbal attacks. Therefore, as a sanction, a request for attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. 2412(d), will not be entertained by the Court in this matter, despite Plaintiff's apparent success on appeal.

> source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(d)(2).

Thus, contrary to the assertion of Plaintiff that the ALJ recited the standard in the negative, the standard as set forth above is: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(d)(2). Plaintiff misstates the law by asserting "The actual law states that a treating physician's is given controlling weight unless that treating physician's opinion is not well supported or it is, inconsistent with the substantial evidence of record." (Pl. Br. at 11).

In the matter at hand, the Plaintiff is a "younger individual between the ages of 45 and 49," 20 C.F.R. § 416.963, has no past relevant work, 20 C.F.R. § 416.965, and has a limited education, 20 C.F.R. § 416.964. The ALJ found the Plaintiff's allegations were not totally credible, and he chose not to give controlling weight to the Plaintiff's treating physician. He explained:

> The undersigned has considered the assessments offered by the claimant's treating physicians. A treating physician's opinion is given controlling weight only if it is well supported and not inconsistent with other substantial evidence. The undersigned finds that the opinions in this case are not supported by objective clinical findings and are inconsistent with other substantial evidence. Therefore, these opinions are accorded little weight. Additionally, the opinions of the medical expert outweigh those of the state agency physicians.

(Id.).

Although the ALJ set forth all of the medical evidence and this Court could reasonably juxtapose the evidence itself, that would not overcome the ALJ's failure to provide an explanation of why the treating physician's "opinions in this case are not supported by objective clinical findings and are inconsistent with other substantial evidence." The district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182. The Third Circuit has "reaffirmed on a number of occasions the

principle that where a report of a treating physician conflicts with that of a consulting physician, the ALJ must explain on the record the reasons for rejecting the opinion of the treating physician." Allen v. Bowen, 881 F.2d 37, 41-42 (3d Cir. 1989) (citing Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986)).  This failure to explain why the ALJ rejected the treating physician's opinions is detrimental to the Defendant.  In Cotter, the Third Circuit held it was error for an ALJ to reject by implication conflicting medical evidence without reasons for rejecting the evidence.  Cotter v. Harris, 642 F.2d 700, 705-06 (3d Cir. 1981).  In short, the ALJ's assessment at step four is not supported by substantial evidence and cannot stand.  A remand is therefore required.

In conclusion, the Court holds that the ALJ's rejection of Plaintiff's SSI claim was not based on substantial evidence.  In rejecting the opinions of the treating physician, the ALJ may have erroneously concluded that Pliantiff had an RFC for sedentary work.  Upon remand, the ALJ must reevaluate the medical evidence, reassess Plaintiff's RFC, and, if necessary, determine whether there are jobs existing in the national economy that Plaintiff can perform, consistent with her RFC, age, minimal education, and lack of past relevant work.

## **CONCLUSION**

For the reasons set forth above, it is on this 5th day of September, 2006,

**ORDERED** that Plaintiff's appeal to this Court to reverse the Commissioner's decision or to remand the claim to the Commissioner is **GRANTED**; and it is further

**ORDERED** that the decision by the Commissioner is **REVERSED** and **REMANDED** for a new hearing before a different Administrative Law Judge and a new decision in accordance with this opinion; and it is further

**ORDERED** that a request for attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. 2412(d), will not be entertained by this Court in this matter; and it is further

**ORDERED** that the Clerk of the Court shall **CLOSE** the Court's file on this matter.


DATED: September 5, 2006                     /s/ Jose L. Linares
                                             JOSE L. LINARES,
                                             UNITED STATES DISTRICT JUDGE